# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LARRY J. HOLLAND, D.O., et al.,

      Plaintiffs,            :        Case No. 3:07-cv-212

                                      District Judge Walter Herbert Rice

   -vs-                                   Chief Magistrate Judge Michael R. Merz

                               :

UPPER VALLEY MEDICAL CENTER,
 et al.,

      Defendants.

## DECISION AND ORDER

This case is before the Court on Motion for Partial Summary Judgment of Defendants Upper Valley Medical Center, Upper Valley Professional Corp., Barbara Evert, Curtis Caughey, Lawrence Gould, David Meckstroth, and Michael Maiberger which was filed and served January 29, 2008 (Doc. No. 20).  The Motion is voluminously supported (Doc. Nos. 22, 23).

Under S. D. Ohio Civ. R. 7.2, Plaintiffs' memorandum in opposition was due to be filed by February 22, 2008.  Instead, Plaintiffs on February 19, 2008, filed their Motion for Extension of Time under Fed. R. Civ. P. 56(f)(Doc. No. 24).

On October 4, 2007, Defendants had filed a Motion for Protective Order to stay all discovery pending decision on their partial summary judgment motion (Doc. No. 13).  Eight days later on October 12, 2007, the parties filed their Fed. R. Civ. P. 26(f) Report (Doc. No. 14).  Therein, they agreed to postpone disclosures under Fed. R. Civ. P. 26 until thirty days after the Court ruled on the motion to stay discovery.  The Report also reflects the parties' differing positions on whether discovery should be stayed pending decision on the motion for partial summary judgment.

1

Consistent with their position, Plaintiffs opposed the Motion to Stay Discovery on October 16, 2007 (Doc. No. 15).

The initial Fed. R. Civ. P. 16 conference was held on October 19, 2007 (Minute entry for that date). During the course of the conference, apparently Judge Rice made a comment regarding the stay, but the parties disagree on what was said and any provisional ruling was not reflected in the Preliminary Pretrial Order of February 15, 2008 (Doc. No. 21). That same Order referred the case for pretrial management to the undersigned. Many cases on Judge Rice's docket in which the filing of preliminary pretrial orders had been delayed were referred to the undersigned on or about February 15, 2008. In an effort to "catch up," many motions which seemed moot because they had been pending for sometime were ruled on by the undersigned in cursory fashion. With respect to the Motion to Stay, since it had not been granted but time was running under the Preliminary Pretrial Order, the Magistrate Judge assumed that discovery was occurring and denied the Motion by notation order on February 18, 2008. Counsel promptly informed the Magistrate Judge that in fact no discovery had occurred, but that the parties had treated discovery as stayed because the Motion to Stay had been filed. The Magistrate Judge convened a telephone conference on February 21, 2008, resulting in a Supplement to the Preliminary Pre-Trial Conference Order, ordering the Motion to Stay reinstated on the docket and setting further briefing (Doc. No. 25). Unfortunately, the Clerk did not reinstate the Motion, so it has not appeared on the Magistrate Judge's electronic list of pending motions. This has occasioned delay in addressing the Motion, for which the Court apologizes to the parties; the Clerk has reinstated the Motion today.

Defendants seek to stay all discovery pending the Court's decision on their Motion for Partial Summary Judgment which asserts their immunity from damages on twelve of the fourteen claims in the Complaint under the Health Care Qualified Immunity Improvement Act of 1986 (the "HCQIA"), 42 U.S.C. § 11101, et seq.. Consistent with the policy goals of the HCQIA, Congress

directed that the immunity claims be decided as expeditiously as possible. *Bryan v. James E. Holmes Medical Center*, 33 F. 3d 1318 (11th Cir. 1994). That court outlined the purpose and structure of the HCQIA as follows:

> Peer review, the process by which physicians and hospitals evaluate and discipline staff doctors, has become an integral component of the health care system in the United States. Congress enacted the Health Care Quality Improvement Act to encourage such peer review activities, "to improve the quality of medical care by encouraging physicians to identify and discipline other physicians who are incompetent or who engage in unprofessional behavior." H.R.Rep. No. 903, 99th Cong., 2d Sess. 2, reprinted in 1986 U.S.C.C.A.N. 6287, 6384, 6384. Congressional findings, recited in the text of the statute itself, note that "the increasing occurrence of medical malpractice and the need to improve the quality of medical care have become nationwide problems that warrant greater efforts than those that can be undertaken by any individual State," 42 U.S.C. § 11101(1), and that these problems "can be remedied through effective professional peer review," id. § 11101(3). In furtherance of this goal, HCQIA grants limited immunity, in suits brought by disciplined physicians, from liability for money damages to those who participate in professional peer review activities. Id. § 11111(a).
>
> Prior to the passage of HCQIA, the specter of litigation seriously impeded the development and vigorous enforcement of hospital peer review procedures. Congress found that "the threat of private money damage liability under [state and] Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review." *Id.* § 11101(4). Accordingly, HCQIA provides that, if a "professional review action" (as defined in the statute) meets certain due process and fairness requirements, then those participating in such a review process shall not be liable under any state or federal law for damages for the results. Id. § 11111(a)(1). Thus, "doctors and hospitals who have acted in accordance with the reasonable belief, due process, and other requirements of [HCQIA] are protected from damages sought by a disciplined doctor." H.R.Rep. 903, at 3, reprinted in 1986 U.S.C.C.A.N. at 6385. HCQIA is designed to facilitate the frank exchange of information among professionals conducting peer review inquiries without the fear of reprisals in civil lawsuits. The statute attempts to balance the chilling effect of litigation on peer review with concerns for protecting physicians improperly subjected to disciplinary action; accordingly, Congress granted immunity from monetary damages to participants in properly conducted peer review proceedings while preserving causes of action for injunctive or declaratory relief for aggrieved physicians. Because

the statutory scheme is somewhat convoluted, we discuss the immunity provisions in detail. The provision of HCQIA that limits the availability of damages for professional review actions provides as follows:

> If a professional review action (as defined in … this title) of a professional review body meets all the standards specified in section 11112(a) of this title, …
> (A) the professional review body,
> (B) any person acting as a member or staff to the body,
> (C) any person under a contract or other formal agreement with the body, and
> (D) any person who participates with or assists the body with respect to the action,
> shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action.

42 U.S.C. § 11111(a)(1).

The standards that professional review actions must satisfy to entitle the participants to such protection are enumerated in section 11112(a) as follows:

> For purposes of the protection set forth in section 11111(a) of this title, a professional review action must be taken–
> (1) in the reasonable belief that the action was in the furtherance of quality health care,
> (2) after a reasonable effort to obtain the facts of the matter,
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

*Id.* § 11112(a). Importantly, HCQIA also creates a rebuttable presumption of immunity: "A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence." *Id.*

Section 11112(b) of HCQIA then enumerates the minimum, or "safe harbor" procedures that will, in every case, satisfy the adequate notice and hearing requirement of section 11112(a)(3). *Id.* § 11112(b). Organized in the form of a detailed checklist, the provision defines what hospitals conducting peer review disciplinary

4

> procedures must do to obtain the Act's protections for itself and the members of its peer review bodies. We discuss this checklist in more detail infra in part III. Congress was careful to explain, however, that "[a] professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a)(3) of this section." *Id*.

33 F.3d 1318 at 1321-1323. Authority cited by Defendants supports the proposition that Congress intended the immunity question to be decided as expeditiously as possible, including upon motion for summary judgment. (See Motion for Stay, Doc. No. 13, at 4, citing cases including *Reyes v. Wilson Mem. Hosp.*, 102 F. Supp. 2d 798 (S.D. Ohio 1998)(Rice, Ch. J.).

Defendants assert that the question of whether they are immune under the HCQIA turns on whether they afforded Plaintiff "procedural due process." (Motion, Doc. No. 13, at 5.) That, they argue, "is most properly resolved by a review of the underlying record." *Id*. The record has been filed with the Motion for Partial Summary Judgment.

Plaintiff initially opposed the Motion for Stay by relying entirely on *Talwar v. Mercer County Joint Twp. Community Hospital*, 244 F.R.D. 398 (N.D. Ohio 2007)(Carr, Ch. J.). Defendants there, represented by the same counsel who represent Defendants in this case, sought the same preliminary relief: sealing of privileged documents, partial summary judgment on the HCQIA immunity claims, and a stay of all discovery until the summary judgment motion had been decided. Judge Carr refused a blanket stay of discovery, allowing defendants to reapply as to particular discovery which might be sought. He held:

> Defendants do not cite, and independent research has not uncovered, a case in which all discovery was stayed pending a summary judgment motion based on HCQIA. While, as defendants note, some courts have on occasion stayed discovery pending adjudication of immunity issues in other contexts, see, e.g., *Chagnon v. Bell,* 206 U.S. App. D.C. 280, 642 F.2d 1248, 1266 (D.C. Cir. 1980), it appears appropriate in this case to limit discovery only after a specific dispute has arisen, rather than in the abstract and in toto.

344 F.R.D. at 399.

5

In their Reply Memorandum, Defendants do not belie Chief Judge Carr's research by citing any case that has granted a blanket stay of discovery pending determination of an HCQIA partial summary judgment motion. Instead, they rely on Chief Judge Rice's decisions in *Reyes, supra,* and *Menon v. Upper Valley Medical Center*, Case No. 3:98-cv-496, Decision and Entry Sustaining in part and Overruling in Part Defendants' Motion for Partial Summary Judgment (Doc. No. 69, Aug. 16, 2007). The relevant portion of the referenced Order is:

> The Plaintiff objects to his inability to pursue discovery of the Seventh Claim, pursuant to the Court's limiting instruction, in the Defendants' previous request for summary judgment. Doc. #61 at 2. The Defendants previously filed a Motion to Stay Discovery (Doc. #23) and a Motion for Partial Summary Judgment (Doc.#20). The Court overruled the Motion to Stay Discovery, with instructions limiting the Plaintiff's discovery to issues pertaining solely to the four HCQIA peer review immunity factors (pertinent to the claims where the Defendants allege immunity under the HCQIA) and as to UVMC's alleged status as a state actor (pertinent to the Plaintiff's previous § 1983 claim). Doc. #37. The Motion for Partial Summary Judgment was overruled, without prejudice to renewal, pending the completion of the additional discovery allowed Plaintiff. *Id.*

*Id.* At 7, n.4. The prior Order (Case No. 3:98-cv-496 Order of August 30, 1999, Doc. No. 37) limited plaintiff to discovery on the four peer review immunity factors upon a specific showing by plaintiff that the discovery would assist him in opposing the motion for partial summary judgment. *Id.* at 4.

The Magistrate Judge perceives no good reason to depart from this Court's precedent dealing with same issues in prior litigation involving the same corporate Defendant. Therefore, Defendants' Motion to Stay all discovery pending decision of their Motion for Partial Summary Judgment is denied. Plaintiffs may proceed with discovery on the service mark issues and on the four peer immunity factors involved in the HCQIA claims.

That said, it remains to determine whether Plaintiffs' Rule 56(f) Motion appropriately establishes the parameters of discovery on the four peer review immunity questions. The Court

6

determines that it does not. If the Magistrate Judge reads the Rule 56(f) Motion correctly, Plaintiffs intend the following discovery just to respond to the summary judgment motion:

1. Depositions of David Meckstroth, Barbara Harbor-Evert, Currtis Caughey, Lawrence Gould, Michael Maiberger, Carl A. Krantz, Amy M. Stahler, Teresa A. Gulker, L.S. Lowry, Victoria Ocampo, Robert Malarkey, and Christopher Grove as persons who participated in the peer review hearings.

2. Deposition of Karen Ebersole.

3. Document discovery from Defendants and third parties.

Plaintiffs' Memorandum focuses on the kinds of discovery Plaintiffs would have liked to do prior to the peer review hearings which the Court infers they want to do now. Plaintiffs have not made the required showing of the relevance of sought discovery to the four peer immunity issues which Judge Rice required in *Menon* and which must now be made in this case. In other words, the task of the Magistrate Judge in ruling on the instant Motions is, to the best of his understanding, enforce what has been the referring Judge's policy with respect to these matters. At least implicitly, Judge Rice has decided that the Court should exercise its discretion under Fed. R. Civ. P. 26(c) to limit discovery in this type of case to information needed to respond to the motions for partial summary judgment. There is no reason to believe that, if Judge Rice were considering the matter de novo, he would do anything different than he did in *Menon*, since the governing statute has not changed in the meantime, nor is there any intervening controlling decision from the Sixth Circuit.

Therefore, Plaintiffs' Fed. R. Civ. P. 56(f) Motion (Doc. No. 24) is denied without prejudice

to its renewal not later than July 1, 2008, with the detail necessary to enable the Magistrate Judge to determine whether the sought discovery is relevant and material on the four peer immunity issues.

June 18, 2008.

                                                    s/ **Michael R. Merz**
                                                    Chief United States Magistrate Judge